IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHYTON INT'L LLC, | CIVIL ACTION |
| Plaintiff, | NO. 11-03584 |
| v. | FILED ELECTRONICALLY |
| DANSKO, LLC, | |
| Defendant. | |

**FILED**
MAY 30 2012
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## CONSENT DECREE

After participation in a settlement conference with the Honorable Paul S. Diamond on April 26, 2012, Plaintiff Khyton Int'l LLC ("Khyton") and Defendant Dansko, LLC ("Dansko") (collectively, the "Parties") agree as follows:

### RECITALS

WHEREAS, on June 25, 2010, Khyton and Dansko entered into a Joint Venture Agreement effective July 1, 2010 (the "Agreement"); and

WHEREAS, on February 17, 2011, Dansko provided written notice to Khtyon that it was terminating the Agreement; and

WHEREAS, Khyton instituted litigation by filing a Complaint against Dansko in the United States District Court for the Eastern District of Pennsylvania, captioned Khyton Int'l LLC v. Dansko, LLC, and docketed as Civil Action No. 11-03584 (PSD) (the "Civil Litigation"); and

WHEREAS, Dansko filed a Counterclaim against Khyton in the Civil Litigation; and

WHEREAS, the Parties have denied and continue to deny liability to each other; and

1

EX1 1151017v7 05/25/12

WHEREAS, the Parties have negotiated in good faith and without an admission of liability have reached a settlement of all claims raised in the Civil Litigation and which could have been raised in the Civil Litigation (the "Claims"); and

WHEREAS, the Parties agree, and the Court finds, that settlement of the Claims alleged in the Civil Litigation without further litigation or trial of any issues is fair, reasonable and in the best interest of the Parties and that entry of this Consent Decree is the most appropriate way of resolving the Civil Litigation;

WHEREAS, this Consent Decree is intended to and does supersede and displace the Agreement and all the parties' obligations thereunder, such that the Agreement no longer has any force or effect; and

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. **Initial Payment By Dansko.** Dansko shall pay the total sum of Six Hundred Twenty Thousand Dollars and Zero Cents ($620,000.00) to Khyton as follows: Four-Hundred Thousand Dollars ($400,000.00) within fourteen days (14) days of the docketing of this Consent Decree by the Court and Two-Hundred Twenty Thousand Dollars ($220,000.00) within one year of the docketing of this Consent Decree by the Court. The initial payment and all future payments shall be made by wire transfer to the Graves Bartle Marcus & Garrett, LLC Trust Account or to such other account as may be jointly directed in writing by Khyton and its undersigned counsel.

2. **Future Payments By Dansko.** For the time period beginning on January 1, 2012 and ending on December 31, 2016 (the "Profit Share Period"), Dansko shall pay to Khyton a percentage of the annual Gross Profit Margin on all Product sales for each calendar year (the "Profit Share Fee") as follows:

2

    a.     three percent (3%) of the annual Gross Profit Margin up to Two Million Dollars ($2,000,000.00);

    b.     nine percent (9%) of the annual Gross Profit Margin from greater than Two Million Dollars ($2,000,000.00) up to and including Four Million Dollars ($4,000,000.00); and

    c.     fifteen percent (15%) of the annual Gross Profit Margin on amounts greater than Four Million Dollars ($4,000,000.00).

As used herein, the term "Gross Profit Margin" means, during any given period of time, an amount equal to (a) the total net revenues (which shall be the total revenues less applicable discounts, returns, allowances and similar items) received by Dansko or any of its affiliates from the sale of the Products during such period, less (b) direct costs attributable to Products sold during such period (including factory costs, agent fees, duties, freight fees, packaging costs and similar items). As used herein, the term "Products" means medical "scrubs" and related medical apparel.

With the sole exception of the first Profit Share Fee payment, Dansko shall pay to Khyton the Profit Share fee quarterly, in arrears, on or prior to the forty-fifth (45th) day following the last day of the applicable calendar quarter, in accordance with the following schedule:

| **Profit Share Fee Payment Due:** | **Payment Represents Products Sold:** |
| --- | --- |
| August 15, 2012 | January 1, 2012-June 30, 2012 |
| November 15, 2012 | July 1, 2012-September 30, 2012 |
| February 15, 2013 | October 1, 2012-December 31, 2012 |
| May 15, 2013 | January 1, 2013-March 31, 2013 |
| August 15, 2013 | April 1, 2013-June 30, 2013 |
| November 15, 2013 | July 1, 2013-September 30, 2013 |
| February 15, 2014 | October 1, 2013-December 31, 2013 |

EX1 1151017v7 05/25/12

| | |
|---|---|
| May 15, 2014 | January 1, 2014-March 31, 2014 |
| August 15, 2014 | April 1, 2014-June 30, 2014 |
| November 15, 2014 | July 1, 2014-September 30, 2014 |
| February 15, 2015 | October 1, 2014-December 31, 2014 |
| May 15, 2015 | January 1, 2015-March 31, 2015 |
| August 15, 2015 | April 1, 2015-June 30, 2015 |
| November 15, 2015 | July 1, 2015-September 30, 2015 |
| February 15, 2016 | October 1, 2015-December 31, 2015 |
| May 15, 2016 | January 1, 2016-March 31, 2016 |
| August 15, 2016 | April 1, 2016-June 30, 2016 |
| November 15, 2016 | July 1, 2016-September 30, 2016 |
| February 15, 2017 | October 1, 2016-December 31, 2016 |

3.  **Product Sales Information.** In order to enable Khyton to determine whether the Profit Share Fee has been correctly calculated, Dansko shall provide to Khyton's undersigned counsel a confidential summary report in the form of Exhibit A hereto (the "Summary Report"). Khyton's undersigned counsel may provide the Summary Report to members of Khyton in electronic form. In addition, Dansko shall provide to Khyton's undersigned counsel a confidential detailed report in the form of Exhibit B hereto (the "Detailed Report"). The Detailed Report shall only be disclosed to members of Khyton as deemed necessary by Khyton's undersigned counsel. Such disclosure of the Detailed Report to members of Khyton shall only be made at the office of Khyton's undersigned counsel provided however that members of Khyton shall not be permitted to photocopy, take notes on, or reproduce the Detailed Report in any way or by any means. Under no circumstances shall the Detailed Report be removed from

4

EX1 1151017v7 05/25/12

Khyton's undersigned counsel's office. In addition to the other confidentiality restrictions and requirements herein, neither counsel for Khyton, nor any members of Khyton, shall transmit or reproduce the Summary Report or Detailed Report by any means to any other person or entity not specifically authorized under this Consent Decree to receive the Summary Report or Detailed Report. The Summary Report and Detailed Report shall be provided, at Dansko's discretion, by overnight mail, facsimile, or email, to Khyton's undersigned counsel only and shall be provided at or before the time the Profit Share Fee is paid. Khyton shall have thirty (30) days from the receipt of the Summary Report and Detailed Report to reasonably inquire of Dansko as to the calculations therein and the basis for the information used in making the calculations contained therein. If Khyton makes a reasonable inquiry, Dansko shall respond to the inquiry within thirty (30) days from the receipt of the inquiry.

4. **Product Decisions.** Khyton agrees and acknowledges that Dansko has sole, exclusive and complete discretion regarding the Products, the sale of the Products in the ordinary course of Dansko's business, including but not limited to Product selection, adoption, manufacturing, and pricing, style, color, and fabric selections and choices, sales, marketing and distribution (and distribution channels) of and for the Products (the "Product Decisions"). Khyton agrees and acknowledges that Product Decisions by Dansko in the ordinary course of Dansko's business shall not serve as a basis for any claim for breach of this Consent Decree.

5. **Inspection and Audit Rights.** The accounting books and records of Dansko applicable to the Products shall be maintained in accordance with Generally Accepted Accounting Principles and shall be kept at the principal place of business of Dansko. An agent or attorney of Khyton, who agrees in writing to be bound by the confidentiality provisions set forth in this Consent Decree, may inspect such books and records related to the Products no more

5

than once annually, upon ten (10) days written notice, to confirm that the Profit Share Fees paid to Khyton for the preceding year was accurate. Dansko shall provide Khyton's agent or attorney with reasonable documentation necessary to support the accuracy of its books and records related to the Products, including the calculation of the Profit Share Fee then paid.

In the event any such audit reveals an underpayment of the Profit Share Fee that is not disputed by Dansko, Dansko shall promptly pay such underpaid amount to Khyton within ten (10) days of written notice of the results of the audit, and, if the underpayment of the Profit Share Fee is more than five percent (5%), and at least $2,500.00, then Dansko shall reimburse Khyton for Khyton's reasonable accountant fees and expenses incurred in connection with such audit. If Dansko disagrees with the results of the audit, then within thirty (30) days of receiving the results of the audit, Dansko shall provide Khyton with a written explanation of the nature of and basis for such disagreement. The Parties shall then promptly meet and confer to attempt to resolve their differences. If the Parties are unable to resolve their differences within thirty (30) days of Dansko providing a written explanation of the nature of and basis for its disagreement with the results of the audit, then either Dansko or Khyton may seek relief from the Court.

6. **Confidentiality.** Khyton and its members agree that the information provided pursuant to this Consent Decree, specifically including but not limited to the Summary Report and Detailed Report referenced in paragraph 3 above, and any information disclosed during an audit as referenced in paragraph 5 above, shall remain confidential in all respects, and that Khyton and its members shall exercise their best efforts not to disclose without the prior written consent of Dansko, any of the information provided pursuant to this Consent Decree, to any person or entity other except as required for tax purposes, required to enforce the terms of this Consent Decree, required by a government entity, or compelled by statute, court order, or rules

6

of professional conduct. Khyton and its members agree and understand that the confidential information provided pursuant to this Consent Decree shall be used solely for the purposes of verifying the accuracy of the calculation of the Profit Share Fee, and shall not be used for any other purpose, including, but not limited to any competitive purpose. In the event that Khyton or its members learn that any individual or entity to whom they have made a disclosure permitted by this paragraph has disclosed or is about to disclose the confidential information, Khyton shall promptly notify Dansko and Khyton and its members shall cooperate with Dansko to prevent or remediate such disclosure or breach. Khyton shall exercise its best efforts to maintain the confidentiality of the information provided pursuant to the Consent Decree. Khyton and its members agree that any breach of this provision that occurs as a result of the failure of Khyton or any of its members to use their best efforts to maintain the confidentiality of the information provided pursuant to the Consent Decree constitutes a material breach of this Consent Decree. Notwithstanding this provision, however, any alleged breach shall not immediately relieve Dansko of its obligations under the Consent Decree, but rather Dansko may seek immediate relief from the Court.

7. **Non-Disparagement.** The Parties shall not make disparaging comments about one another to any third party or to their agents or employees.

8. **General Mutual Release.** For and in consideration of this Consent Decree, it is the express intention of the Parties to generally release, acquit and forever discharge each other, including but not limited to their present, former and future parents, divisions, subsidiaries, affiliates, joint ventures, agents, representatives, attorneys, officers, directors, investors, stockholders, employees, limited partners, general partners, assigns, heirs, executors, administrators, predecessors and successors from any and all Claims, demands, liabilities,

7

EX1 1151017v7 05/25/12

damages, causes of action or suits of any kind that the Parties had, have, or may have, whether known or unknown, whether asserted or not asserted, arising out of or in any way relating to the Agreement and/or the Civil Litigation (together the "Released Claims"). The Parties agree that the release set forth herein shall be and remain in effect in perpetuity in all respects as a complete and mutual general release as to the matters released and the Released Claims. Without limiting the foregoing Released Claims, the Parties specifically further also agree as follows:

a. **Release by Khyton.** Khyton on behalf of itself, any parent, subsidiary, and/or affiliated corporations, and all of its present, former and future parents, divisions, subsidiaries, affiliates, joint ventures, agents, representatives, attorneys, members, officers, directors, investors, stockholders, employees, limited partners, general partners, assigns, heirs, executors, administrators, predecessors and successors, hereby fully and forever releases Dansko, and all of its present, former and future parents, divisions, subsidiaries, affiliates, joint ventures, agents, representatives, attorneys, members, officers, directors, investors, stockholders, employees, limited partners, general partners, assigns, heirs, executors, administrators, predecessors and successors (the "Dansko Released Parties"), from any and all claims, demands, liabilities, damages, causes of action or suits of any kind that Khyton had, has, or may have, whether known or unknown, suspected or unsuspected, whether asserted or not asserted, arising from or out of any omissions, acts, or facts that have occurred up through and including the docketing of this Consent Decree by the Court, including, without limitation, the Released Claims.

b. **Release by Dansko.** Dansko on behalf of itself, any parent, subsidiary, and/or affiliated corporations, and all of its present, former and future parents, divisions, subsidiaries, affiliates, joint ventures, agents, representatives, attorneys, members, officers, directors, investors, stockholders, employees, limited partners, general partners, assigns, heirs, executors, administrators, predecessors and successors, hereby fully and forever releases Khyton, and all of its present, former and future parents, divisions, subsidiaries, affiliates, joint ventures, agents, representatives, attorneys, officers, members, directors, investors, stockholders, employees, limited partners, general partners, assigns, heirs, executors, administrators, predecessors and successors (the "Khyton Released Parties"), from any and all claims, demands, liabilities, damages, causes of action or suits of any kind that Dansko had, has, or may have, whether known or unknown, suspected or unsuspected, whether asserted or not asserted, arising from or out of any omissions, acts, or facts that have

8

occurred up through and including the docketing of this Consent Decree by the Court, including, without limitation, the Released Claims.

c.   **Exception.** The releases herein do not extend to any rights or obligations created under this Consent Decree or to any of the obligations imposed on the Parties by the Confidentiality Agreement and Protective Order entered by the Court on November 17, 2011.

9.   **Notices.** All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the Party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, if not, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the addresses set forth below or at such other address or electronic mail address as Dansko or Khyton may designate by ten (10) days advance written notice to the other party hereto.

If to Dansko:

Dansko, LLC
33 Federal Road
Penn Business Park
West Grove, PA  19390
Attn: General Counsel
scott.schwartz@Dansko.com
Fax: 484.748.6971

with a copy to:

Ronald L. Williams, Esquire
Fox Rothschild LLP
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA  19341
rwilliams@foxrothschild.com
Fax: 610.458.7337

EX1 1151017v7 05/25/12

|  |  |
|---|---|
| If to Khyton: | David L. Marcus, Esquire<br>Graves Bartle Marcus & Garrett, LLC<br>1100 Main Street, Suite 2700<br>Kansas City, Missouri 64105<br>david.marcus@pobox.com<br>Fax: 816.222.0534 |
| with a copy to: | Khyton Int'l LLC<br>Attn: William DiRocco<br>13117 Beverly Street<br>Overland Park, KS 66209<br>bdirocco@halcyonentllc.com |

10. **Expenses, Legal Fees and Costs.** Except as specifically provided herein, the Parties shall bear their respective costs for all expenses, including, but not limited to, expenses and legal fees in connection with the Civil Litigation and this Consent Decree.

11. **Retention Of Jurisdiction And Governing Law.** The Court shall retain sole and exclusive jurisdiction to implement, enforce, interpret and otherwise carry out the terms of this Consent Decree. This Consent Decree shall be governed by and construed in accordance with the laws of Pennsylvania without regard to conflict of law provisions.

12. **Severability.** In the event that any one or more of the provisions contained in this Consent shall be declared in a legal forum to be invalid, illegal, ineffective or unenforceable in any respect, such invalidity, illegality, ineffectiveness or unenforceability shall not affect any other provision of this Consent Decree, which shall remain in full force and effect, and be valid and binding upon the Parties.

13. **Counterparts.** This Consent Decree may be executed in several counterparts, each of which shall be considered to be an original or total copy of this Consent Decree.

14. **Entire Agreement.** This Consent Decree constitutes the entire agreement between the Parties relating to the Civil Litigation, the Released Claims, and the Consent Decree.

10

15. **Advice of Counsel/Reading of the Consent Decree.** The Parties acknowledge that they are represented by, and have consulted and relied upon the advice of legal counsel in executing this Consent Decree. The Parties further acknowledge that they have read this Consent Decree in full before executing it and that they understand and agree to its terms and their obligations hereunder.

16. **Non-Assignment.** The Parties represent that none of them has assigned, conveyed or otherwise transferred to any third parties any of the claims, rights or obligations subject to this Consent Decree.

17. **Ambiguities.** The Parties acknowledge that each has participated in the drafting of this Consent Decree, and that this Consent Decree shall not be construed against any Party as the drafter.

18. **Headings.** The Parties acknowledge that the headings in this Consent Decree are for convenience of reference only and are not a material part of the Consent Decree.

19. **Authority to Sign.** The persons executing this Consent Decree represent and affirm that they have full authority to do so.

IT IS SO ORDERED:

_____ 5/30/12
The Honorable Paul S. Diamond

11

EX1 1151017v7 05/25/12

IN WITNESS WHEREOF, the Parties, by and through their undersigned counsel, intending to be legally bound, have executed this Consent Decree on the dates set forth below.

| | |
|---|---|
| /s/ David L. Marcus | /s/ Ronald L. Williams |
| David L. Marcus, Esquire | Ronald L. Williams, Esquire |
| Graves Bartle & Marcus Garrett LLC | Stephanie Nolan Deviney, Esquire |
| 1100 Main Street, Suite 2700 | John Mueller, Esquire |
| Kansas City, MO 64105 | Fox Rothschild LLP |
| (816) 256-4699 | 747 Constitution Drive, Suite 100 |
| *Attorneys for Plaintiff,* | P.O. Box 673 |
| *Khyton Int'l LLC* | Exton, PA 19341-0673 |
| | (610) 458-7500 |
| | *Attorneys for Defendant,* |
| | *Dansko, LLC* |